## PANHANDLE & S. F. RY. CO. v. FRIEND et ux.

### No. 8171.

Court of Civil Appeals of Texas. Austin.

Feb. 12, 1936.

Rehearing Denied March 4, 1936.

Terry, Cavin, & Mills, of Galveston, and Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Upton & Upton and Travis E. Baker, all of San Angelo, for appellees.

McCLENDON, Chief Justice.

Frank Friend and wife recovered judgment against the railway (Panhandle & Santa Fe Railway Company), upon a special issue verdict, in damages for personal injuries to Mrs. Friend and property damage to an automobile, the result of a collision between the automobile (driven at the time by Mrs. Friend) and a switch engine of the railway at the intersection of the latter's tracks and Chadbourne street in San Angelo. The railway has appealed.

Two grounds for reversal are urged: (1) That the burden of proof was erroneously placed upon the affirmative of the issue of unavoidable accident; (2) that the issue of whether the crossing was extraordinarily hazardous requiring a flagman (the only found ground of negligence supporting the verdict) was erroneously submitted, for reasons hereinafter noted.

It is conceded that the issue of unavoidable accident was subject to the urged objection. See Magnolia Coca Cola Bottling Co. v. Jordan, 124 Tex. 347, 78 S.W. (2d) 944, 97 A.L.R. 1513; Dallas Ry. & Terminal Co. v. Darden (Tex.Com.App.) 38 S.W.(2d) 777, and authorities there

cited. Appellees contend, however, that the facts of the case do not present the issue of unavoidable accident. They also contend that the evidence conclusively shows that the crossing was extraordinarily hazardous. They assert, therefore, that any error in the respects urged was immaterial and consequently harmless. We will first consider these contentions of appellees, which we have concluded should be overruled.

The collision occurred about 8 o'clock p. m. Sunday, April 16, 1933. Mrs. Friend was alone, driving north on Chadbourne street, which, at this point, runs practically due north and south. The switch engine was moving southwest, the tracks at this point intersecting Chadbourne street at an angle of about 45 degrees. We will, however, for convenience use east and west in referring to the course of the railway's tracks. There were two tracks crossing the street, the main line track on the north and the passing track on the south. A switch track branched off from the main line towards the south, beginning about the center of the street. It connected further east with the passing and other switch tracks. The passenger depot was some 50 or more feet west of the street on the north side of the main track. An eastbound train was standing on the main track at the passenger depot, with its headlight burning. It was scheduled to leave at 8:30 p. m. To the east of the street and south of the tracks the only obstructions for about 50 feet were a few poles. At about 50 feet south there were several small buildings. After passing these buildings going north, the view of the tracks was clear, except for these poles for several hundred feet. The switch engine was headed east. It had just "spotted" the passenger train and pushed a two-coach motor train, which had recently arrived and was standing at the passenger depot, east on the main track across Chadbourne street, thence onto the switch, thence onto the passing track. It then proceeded west on the passing track, pulling the motor train. As it was crossing Chadbourne street, the collision occurred. Both the automobile and the switch engine were moving very slowly. A brakeman, with a lantern was standing on the south end of the running board of the switch engine tender. He and the engineer, who was in the cab on the south side, testified that they saw the car as it approached the crossing, but presumed from its movements that it would stop before it reached the track.

They only realized that it would not stop when it was but a few feet from the track, when the brakeman jumped off the running board, hollered, and gave the stop signal with his lantern. Mrs. Friend testified that she looked to her right about the time she passed the small structures to the east of the street and saw no engine or train. She did not hear a whistle nor bell. She then looked to the left where the train was standing. She did not see the switch engine until it was practically upon her. The front of the car was struck by the rear end of the switch engine and shoved westward across the street for a distance estimated at from 4 to 8 feet. The evidence was without substantial dispute that Chadbourne street at this point was one of the main traffic arteries leading out of the city toward the south, where several suburban residential additions were located; that the traffic was heavy, especially at this hour; that in crossing the street going east one of the train operatives acted as flagman for the switch engine train. Mrs. Friend lived in one of the southerly suburbs and was well acquainted with the crossing. She was on her way to church when the collision occurred. The engine of the eastbound train was making a great deal of noise.

Upon issues, other than those noted above, the jury found: (4) That defendant did not fail to have the switch engine lighted; (7) nor to give the signals required by ordinary prudence; (10) nor to blow the whistle before the engine started across the street; (13) that it did fail to ring the bell and keep it ringing; (14) was negligent therein; (15) but such negligence was not "the proximate cause of the injury"; (16) discovered peril was negatived; (19), (22), (25), and (28) that Mrs. Friend was not contributorily negligent in various particulars.

We think the situation thus presented would support findings that neither Mrs. Friend nor the railway was guilty of negligence, and therefore that the collision was the result of an unavoidable accident. The case here is clearly distinguishable from those in the two cases cited above (Magnolia Coca Cola Bottling Co. v. Jordan, and Dallas Ry. & Terminal Co. v. Darden). In each of those cases the situation was such that under no reasonable hypothesis could the casualty be explained than that of negligence of one or the other party to the suit. In the Jordan Case plaintiff's car collided

with a car parked on the side of the street. Plaintiff contended that this collision was caused by defendant's truck striking plaintiff's car from the rear. Defendant contended that its truck never struck plaintiff's car. The evidence, conflicting as to these contentions, presented no other theory of causation. Each of these theories was held to establish negligence as a matter of law. An analogous situation was presented in the Darden Case, in which a street car struck the rear end of an automobile moving in the same direction on the street car track in a public city street. Here the situation was much more complicated, presenting a variety of elements warranting findings of ordinary care on the part of both parties to the suit.

■ The issue of extrahazardous crossing requiring the additional precaution of a flagman at this particular time we think was clearly presented by the evidence. We do not think, however, that the evidence was so conclusive in this regard as to establish this issue as a matter of law. So far as the record shows, there had never been a previous accident at this crossing. It is to be noted also that the situation presented in the eastward movement of the switch engine train across the street, when one of the operatives acted as flagman, was essentially different from the involved westward movement of the same train. In the former the engine was pushing two motor coaches ahead of it across the street; whereas in the latter the two coaches were being pulled by the engine, which was backing across the street, the coaches being to the east of the engine. A brakeman on the running board of the tender, and the engineer's relatively close proximity to the west extremity of the moving train, would support a finding that the additional precaution of a flagman was not required.

We think it unnecessary in this connection to do more than cite the case of Tisdale v. Ry., 228 S.W. 133, in which Judge Powell, writing for section B of the Commission of Appeals, very exhaustively reviewed the authorities upon this subject both in this state and other jurisdictions, including the federal Supreme Court.

The special issues upon this subject (each of which was answered "Yes") follow:

"1. Do you find from a preponderance of the evidence that an ordinarily prudent person would have kept and maintained a watchman or flagman at the railroad cross-

ing on Chadbourne Street at the time of the accident described in plaintiff's petition?"

"2. Do you find from a preponderance of the evidence that the defendant is guilty of negligence as that term is herein defined in not having a flagman or watchman at the railroad crossing on Chadbourne Street at the time of the alleged injury herein?"

"3. Was said negligence, if any negligence there was, on the part of the defendant, its agents and servants, the direct and proximate cause of the injury, if any, of the plaintiff as complained of."

It is first contended by the railway that inasmuch as the issue whether the crossing was extraordinarily or unusually hazardous was not specifically submitted to nor found by the jury, the verdict will not support the judgment predicated upon the issue of negligence in not having a flagman at the crossing. This contention is predicated upon the railway's construction of the holding in Ormsby v. Ratcliffe, 117 Tex. 242, 18 S. W.(2d) 1084, and other cited cases. While this court entertains no doubt as to the holding in Ormsby v. Ratcliffe, expressions in some of the opinions by the Commission and by other Courts of Civil Appeals evidence a conflict of view and holding among the authorities upon this question. Much confusion has resulted from this conflict, and since the question is one of practice which arises frequently in the trial of special issue verdict cases, a restatement of the views of this court thereon we think appropriate.

Prefatorily, it should be held in mind that in construing statutes, a generally accepted rule, now enacted into statute, requires that, "in all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy." R.C.S. art. 10, subd. 6.

■ This rule has peculiar application to procedural statutes regulating the manner in which the courts are required to perform their official functions, the objective of which is to secure to the litigant as simple, prompt, and expeditious determination of his case as is consistent with fair and impartial justice, reducing as far as practical to a minimum the delay and expense incident to reversal and new trial.

In 1897 the Legislature amended the special verdict statute (then article 1331, now article 2190) so as to provide that: "The failure to submit any issue shall not be

deemed a ground for reversal of the judgment upon appeal or writ of error unless its submission has been requested in writing by the party complaining of the judgment. Upon appeal or writ of error, an issue not submitted and not requested by a party to the cause, shall be deemed as found by the court in such a manner as to support the judgment; provided there is evidence to sustain such finding." Chap. 7, p. 15, Gen. Laws 1st Sp.Sess. 25th Leg.

In the emergency clause to this act it was asserted that: "The fact that much inconvenience and intolerable delay accrue to litigants in this State, the tendency of which is to prolong litigation and crowd and burden the dockets of the courts, for want of a law authorizing a simple and expeditious method for the decisions of controverted questions of fact by special verdict, creates an imperative public necessity," etc.

Under the "old law," a special verdict in order to support a judgment must be complete in itself, embodying every element essential to recovery or defense; otherwise it might be attacked for insufficiency on appeal, although no objection had been made to the issues in the trial court. Nothing was presumed. The resultant "evil" was as stated in the emergency clause of the 1897 act. The "remedy" was to require objections in the trial court, absent which, to supply omitted essentials by presumption.

In 1913 further amendment required the charge (whether general or special) to be read to the jury before the argument, after it had been submitted to the respective parties for objection; "and all objections not so made * * * shall be considered as waived." Chapter 59, p. 113, § 3, Gen. Laws, Reg.Sess. 33rd Leg., 1913, present article 2185.

This act placed both general and special verdicts substantially upon the same footing in requiring objections to the charge, to be availed of on appeal, to be made in the trial court before the charge was submitted to the jury. The manifest purpose was to construe nonobjection to the charge as acquiescence in the mode and manner of submitting the case to the jury as a proper submission of the controverted issues in the case.

The same act (1913 present article 2189) further amended the special issue statute by authorizing the trial judge, upon his own motion, and requiring him upon request of either party to submit the case upon special issues.

There have been some later amendments, but they are not involved here, and leave unaffected the above provisions.

On April 21, 1920, Chief Justice Fly construed article 2190 not to apply to wholly unsubmitted, separate, or independent grounds of recovery, so as to warrant the assumption of their finding in support of an otherwise erroneous judgment in favor of plaintiff. The language he employed to express this holding was: "It [article 2190] simply means that where a jury has passed on certain issues as to a certain case submitted to them, if there be evidence as to other necessary matters connected with the issues found by the jury, it will be deemed that the court found on such matters in order to support the judgment." San Antonio Public Service Co. v. Tracy (Tex.Civ.App.) 221 S.W. 637, 638.

In commenting upon the contention that unsubmitted independent grounds of recovery would be presumed, under the article, as found in support of the judgment, the distinguished Chief Justice said: "If a plaintiff can allege separate acts of negligence, acquiesce in the submission of only one of them to a jury, and then sustain the verdict on a ground of negligence upon which the jury did not pass, but which it is presumed was found by the judge, jury trial would become a farce, and the ultimate decision on facts as to other grounds of negligence would rest with the judge."

Before this opinion was published, the Commission of Appeals, on June 9, 1920, handed down an opinion to the same effect, in Texas City Transportation Co. v. Winters, 222 S.W. 541, 542, 543. The holding in that case was thus stated: "The power of the trial court to substitute its findings, where none have been made by the jury does not admit of a finding by the court upon an independent ground of recovery which the party alleging it does not urge. In such case, the issues submitted will be treated as embracing the only grounds upon which recovery can be had; and the failure of plaintiff to tender an issue not submitted by the court will be treated as a waiver or abandonment thereof."

In an opinion by Mr. Justice Greenwood, on June 28, 1924, the holding in the Tracy Case was approved in the following language: "No other conclusion is warranted in this case than that defendants in error waived any right to recover, under the law

as applied to controverted facts in evidence, save as found by the jury in answer to the question submitted to them. Texas Drug Co. v. Cadwell (Tex.Civ.App.) 237 S.W. [968] 976; San Antonio Pub. Serv. Co. v. Tracy (Tex.Civ.App.) 221 S.W. [637], 638." Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S.W. 902, 905.

The opinion in Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084, by Mr. Justice Pierson, on January 11, 1928, was written upon refusing an application for writ of error, because (the opinion reads): "It is deemed advisable to write upon one issue in the case, inasmuch as there seems to be considerable confusion in the Courts of Civil Appeals, and among some very able lawyers of the state, in relation to a certain rule of practice and the construction of article 2190."

The holding in the Conn, Winters, Tracy, and several other cases, including Citizens' Nat. Bank v. Texas Compress Co. (Tex. Civ.App.) 294 S.W. 331 (to which we will later advert), were expressly approved in the following announced rule: "When the omitted issue constitutes a complete ground of recovery, or a complete defense, a failure to request a submission of that issue waives said ground of recovery or said ground of defense."

The "confusion" adverted to was in large measure due to a construction placed by some of the courts and members of the bar upon the decision in Moore v. Pierson, 100 Tex. 113, 94 S.W. 1132, 1134, which brought the holding in that case in conflict with Ormsby v. Ratcliffe. This asserted conflict was strenuously urged upon rehearing in Citizens' Nat. Bank v. Texas Compress Co., above, and was there thus disposed of: "There are expressions in the Moore Case and in a number of other opinions, both by the Supreme Court and the Courts of Civil Appeals, which, taken generally and in the abstract, may be construed as contrary to our holding in this case and those in the cases cited in support of it; but an examination of the question before the court in the Moore Case, and in each of the cases whose general language is apparently to the contrary, will disclose the fact that the question presented here and in the cases cited in our original opinion was not then before the court." 294 S.W. 331, at page 340.

This asserted conflict was strenuously urged in the applications for writ of error in both Citizens' Nat. Bank v. Texas Compress Co. and Ormsby v. Ratcliffe.

The distinguished author and jurist, Judge Speer, in his able and exhaustive treatise on the Law of Special Issues in Texas (1931), takes issue with the holding in Ormsby v. Ratcliffe as being: (1) "Directly contrary to the decision in Moore v. Pierson, the opinion in which was written by Justice Williams at a time when the Supreme Court was composed of Chief Justice Gaines and Associate Justices Brown and Williams"; and (2) "a clear instance of unwarranted interference with the legislative prerogative." Such criticism from so high a source should not, we think, go unchallenged. The author concedes that "the question of practice was at the time before the Supreme Court and the Commission of Appeals in several cases which accentuated the importance of a determination of the matter, and *he knows that the decision was not made without a most unusual consideration.*" (Italics ours.) It is manifest that the Supreme Court had before it and most carefully considered the views expressed in each of these criticisms. Had the court felt that its decision in any way conflicted with Moore v. Pierson, it is unreasonable to suppose that it would have been wholly silent upon the subject. While always with reluctance, the court has not hesitated to overrule its former decisions when impelled thereto by a sense of duty; nor, in so doing, frankly, though deferentially, to concede the conflict in decision.

■ Keeping in mind the well-established rule that it is the decision of the court which constitutes its authority, and not the particular wording or course of reasoning of the opinion, taken in the abstract, or, as sometimes expressed, the "decisis" and not the "dictis" of the opinion; that what the court says must be construed in the light of and in reference to the specific question before it for decision; we are unable to construe the holding or decision in Moore v. Pierson as having any substantial bearing upon or relation to that in Ormsby v. Ratcliffe, other than to support it.

Moore v. Pierson was a suit for damages upon two separate trespasses, each constituting not only a separate ground of recovery, but an independent and unrelated cause of action. Plaintiff submitted a general charge which embraced both of these trespasses. Defendant requested a special issue verdict. Plaintiff's request

was denied, and defendant's granted. The court thereupon submitted only one of the trespasses, omitting entirely the other. Plaintiff made no objection to the charge other than his previous request for a general charge. The jury findings and the judgment were against (not in favor of) plaintiff, who was seeking on appeal to set aside, not to "support" the judgment. The Supreme Court held that plaintiff's request for a general charge submitting both trespasses could not be construed as a request to submit in the special issue charge the trespass therein omitted by the court. The language of the opinion contended to embody a holding in conflict with Ormsby v. Ratcliffe was employed in connection with an objection "to the charge that it excluded from the consideration of the jury the cause of action asserted for the second trespass, and," says the court, "that it did so cannot be denied. But the plaintiff has not put himself in a position to raise that objection on appeal." The court then discusses the 1897 act as related to this question. Commenting on the first sentence of the above-quoted portion of the act, to the effect that failure to submit an unrequested issue shall not be ground of reversal, the court says that if this sentence stood alone, "it might be susceptible of the interpretation that it applies only to omissions to submit, and not to positive withdrawals of or a refusal to submit issues, and might admit of the application of the old rule of practice which required special requests to supply omissions, but not to correct positive and affirmative errors. But the last provision requires the appellate court to treat an issue not submitted or requested as so found by the trial court as to sustain the judgment, if there be evidence to support such a finding." This language was used in disposing of an effort upon the part of a losing plaintiff to obtain reversal of a judgment against him on the ground that the trial court had erroneously omitted from a special issue charge, and thereby inferentially refused to submit to the jury, one of his alleged independent causes of action, although he had not complied with the statutory requirement that he make written request therefor. The holding in substance was the same as that in Ormsby v. Ratcliffe, to the effect that plaintiff's nonrequest amounted to a waiver of the omitted cause of action. If the jury finding had been in plaintiff's favor on the cause of action submitted, and upon appeal by defendant it were held that reversible

error was presented as regards that issue, is there any warrant for the conclusion that the opinion is authority for a holding that regardless of such error the judgment must be affirmed, under the "deemed as found" provision, merely because defendant had not requested submission of the omitted cause of action? Clearly no such state of facts or analogous state of facts was presented to the Supreme Court in that case. Had such case been presented, can it reasonably be supposed that the court would have affirmed the judgment upon jury findings which assessed damages for one trespass, upon a "deemed as found" finding of such damages upon a wholly different trespass, producing injury in no way referable or related to the submitted trespass? And yet, this is precisely what the court must have done under the circumstances, if its decision be construed as conflicting with Ormsby v. Ratcliffe.

Let us consider for the moment the effect of this contention. The statute, it should be noted, is not dealing with express findings of the trial judge, but with unexpressed findings supplied by the appellate court in support of the judgment. If presumption of finding in support of the judgment be construed to require an automatically presumed or "deemed" affirmative finding in support of an unsubmitted independent ground of recovery (or defense) or independent cause of action (as in Moore v. Pierson), then necessarily the presumed finding arises at the time the judgment is rendered and not at the time the charge is given to the jury; for until the judgment is rendered, it cannot be known in whose favor the omitted issue is found. The plaintiff (or defendant, as the case might be) could well afford, in fact it would be to his decided advantage, not to request one or more grounds of recovery (or defense) which the court had omitted. The defendant (or plaintiff) would be put to the dilemma of running the risk of losing the case by not requesting the submission; or, by requesting it, of conceding that the evidence was sufficient to support the ground of recovery (or defense) under the doctrine of invited error, which obtained in this regard as to special verdicts prior to the amendment of 1931 (Acts 1931, 42d Leg., Reg.Sess., p. 120, c. 78, § 1 [Vernon's Ann.Civ.St. art. 2190]). This construction of the statute is sometimes contended to proceed upon the theory that the parties have by implied agreement with-

drawn the omitted subject from the jury and submitted it factually in all of its phases and elements to the trial judge, who is thereby privileged, after the verdict (or, quere, before?) to decide the matter for either party as he may conclude the evidence preponderates. Under this theory, the trial judge would be authorized to wholly disregard the verdict upon the issues submitted, and determine the case upon his own findings regarding wholly unsubmitted grounds of recovery or defense. In fact, it would be his duty, under this theory, to weigh the evidence on the unsubmitted grounds, and render judgment in accordance with his own conclusion thereon, untrammeled by the jury's findings on the submitted issues. There is nothing in our procedure which inhibits parties by agreement to withdraw a part of the case from the jury and submit it to the judge factually, leaving other matters to be decided by the jury. There is, however, nothing which would do more violence to the actual intention of litigants than to construe their nonrequest for submission into an affirmative agreement to submit the omitted fact question to the judge. Under this theory a defendant (say in a negligence case) could avoid a jury trial upon his pleas of contributory negligence, and obtain a decision thereon by the trial judge, after an adverse verdict as to his own primary negligence.

Under the other theory (automatic presumption of finding in support of the judgment), the deemed finding is made to depend upon the jury's findings upon other and wholly unrelated grounds of recovery or defense. As a matter of fact, the unrequested grounds of recovery or defense are usually either entirely lost sight of on account of their relative insignificance in the evidence, or abandoned because the party asserting them regards the evidence insufficient to support them; and the effort to support the judgment on appeal on the deemed finding theory is an afterthought. The duty of the appellate court, under this theory, would be to uphold an otherwise erroneous judgment, upon evidence of however doubtful or questionable character, and regardless of how strong and convincing the conflicting evidence might be, provided there was some evidence of sufficient probative force to support an affirmative finding upon the unsubmitted ground. The losing party below would even be deprived of his right to have the Court of Civil Appeals review the question factually, and sufficiency of the evidence would necessarily be considered only as a matter of law.

These results would necessarily follow from this construction of article 2190, a construction which Judge Fly has aptly criticized as making of jury trial a farce.

■ We have never been able to find anything in the language of the article to warrant such construction. Its purpose was to provide "a simple and expeditious" proceeding for jury fact finding under the special verdict method, and to obviate reversals of otherwise correct judgments, by supplying omissions of essential fact findings, where no request had been made for their submission, omissions, which under the prior law, could be taken advantage of on appeal, although not urged in the trial court. "Issues deemed found in support of the judgment" relates to the preceding sentence which obviates reversal because of "failure to submit" some "issue" essential to support the judgment. It was to supply omissions but for which under the prior law the judgment must be reversed for insufficiency in finding, regardless of its correctness otherwise. There is nothing in the language of the article or the emergency clause to suggest that its purpose was to render harmless positive reversible errors in the charge which had been seasonably pointed out in the trial court and properly preserved on appeal, by presuming an affirmative finding upon some wholly unsubmitted independent ground of recovery or defense, unrelated to those submitted and found upon. Such construction would do violence to the long recognized theory of the case doctrine, by upholding a judgment upon a theory wholly foreign to any upon which it had been rendered.

■ That article 2190 does not admit of the construction that wholly unsubmitted independent grounds of recovery or defense are deemed found in support of an otherwise erroneous judgment is, of course, no longer an open question. The decision in Ormsby v. Ratcliffe has had legislative sanction in the re-enactment of the article in 1931, without any change in this regard. The discussion of the subject, however, is submitted introductorily as apropos appellant's above contention which is predicated upon a construction which some of the cases have given to Ormsby v. Ratcliffe and other like holdings. This construction derives from interpretations placed upon ex-

pressions in some of the cases to the effect that it is the duty of the party upon whom the burden rests to request "issues," otherwise they are waived. A careful examination of such cases will disclose that "issues" was used in the sense of separate or independent grounds of recovery or defense, and not in the sense of component elements of such grounds. Only ultimate issues of fact essential to recovery or defense are required or proper to be submitted to the jury; and to construe the statute as effecting a waiver of a ground of recovery or defense because of the omission of some unrequested component element thereof is to destroy the statute altogether. For, it may be pertinently asked, what issues would then be left to be deemed found in support of the judgment? Manifestly, only those which were nonessential, or purely evidentiary. Such issues not being essential, to enact a statute to supply them by presumption of finding would be pointless; and the "evil" sought to be remedied by the statute would remain in full force and vigor as before.

It may be argued that since the statute, as construed in Ormsby v. Ratcliffe, places the burden upon the party urging it to request submission of a ground of recovery or defense, a like burden should extend to every essential element of such ground; that the opposing party should not be required, under penalty of waiver, to supply, by requesting them, elements essential to his adversary's case; that he should be permitted to sit silently by with a "trump card up his sleeve," so to speak, and after the jury has returned an adverse verdict, and "the game is over," and it is too late to do anything about it, to obtain a new trial on account of the omitted issue; that it is not his business or affair to instruct his adversary's attorney in the correct method of trying such adversary's case; and that to supply such omissions by presumption of finding puts a premium on carelessness and ignorance in the preparation of cases for trial. However cogent these arguments might be regarded if directed against the policy or wisdom of the article, they have no weight in support of a construction of the statute, the effect of which would be to nullify it, for all practical purposes, and completely frustrate the legislative objective in its enactment.

The same policy was, in 1913 (article 2185), adopted as regards the general charge. Let us assume that this case had

been so submitted, the court instructing the jury that if they found in favor of plaintiff the facts detailed in the three special issues above quoted, then they should render a verdict for the plaintiff. The burden would then be placed upon defendant to point out by objection the omitted issue or element of unusually hazardous crossing. "All objections not so made and presented shall be considered as waived." There is an essential and controlling distinction in this respect between an entire ground of recovery and some essential component element only thereof. Entire omission of the former precludes its being urged thereafter in support of a general as well as a special verdict. Where, however, the ground is submitted, however erroneously or incompletely, the parties are thereby put upon notice that the jury's answers to the issues actually submitted will form the basis of the court's judgment thereafter to be rendered thereon. It then becomes the duty of each party to point out errors of omission or commission, or be held estopped from thereafter urging them. Nor is this an undue burden. It is as much the duty of defendant as of plaintiff (and vice versa) to know the law applicable to the issues which are submitted as the basis of a judgment which will impose a liability against him, if the findings thereon are adverse to him. For reasons which the Legislature deemed salutary, the law requires him to make his objections at a time when the error or omission can be cured, and the expense and delay incident to reversal thereby avoided. It should also be remembered, in this connection, that not alone the litigants are vitally interested in the expense of litigation. They bear only a portion of this expense. A large part is borne by the state or county. Especially is this true in jury trials, wherein the litigant pays only $5 per case, and the county has to pay at the rate of $36 per day, regardless of the number or duration of trials. Of what substantial right is the litigant deprived by requiring him to urge his objections in the trial court? The same requirement pertains to the introduction of evidence.

■ It is not necessary, we think, to go to the extent of holding that where no issue regarding liability but only the issue of the amount of damages is submitted, the former will be deemed as found in support of the judgment. Such a charge is tantamount to a directing of verdict, leaving to the jury only the assessment of dam-

ages. Expressions in North v. Atlas Brick Co. (Tex.Com.App.) 13 S.W.(2d) 59, susceptible of the contrary view, are clearly obiter. A peremptory instruction is not in any proper sense a charge, and objections are not required. Walker v. Haley, 110 Tex. 50, 214 S.W. 295; Citizens' Nat. Bank v. Texas Compress Co., above. But where issues are submitted which are clearly referable to a specific ground of recovery, it is the manifest purpose of the statute that omissions in the charge will .be supplied by presumption of finding, where there is supporting evidence.

■ The railway filed the following objections to the above-quoted special issues:

"7. To the 1st Special Issue for the reason that the same is in the nature of a general charge, is not warranted by the pleadings in this case, is not warranted by the evidence in the case, is duplicitous and multifarious and on the weight of the evidence, assumes a controverted fact in the case, and is not a proper submission of the element therein sought to be submitted. Same does not submit the proper findings necessary for the predication of liability and in particular character of crossing and an answer thereto would not constitute a proper test of liability upon this defendant.

"8. To the 2nd Special Issue for each reason given in connection with 1st Special Issue above, for the reason that same in connection with the first constitutes a dual submission.

"9. To the 3rd Special Issue· for each reason given in connection with 1st and 2nd above, here adopted by reference."

The first sentence of objection 7 we think is too general to constitute compliance with the statute. It does not point out wherein special issue No. 1 is defective or erroneous in the various alleged respects. The second sentence, however, does point out specifically the failure to submit a finding on the "character of the crossing." The objection is repeated as to each of the second and third special issues in objections 8 and 9. This specific objection, we think, should have been sustained.

■ We also think that objection 8 to the effect that special issue No. 2 was but a repetition of No. 1, and constituted a dual submission was well taken. Whether this would call for a reversal it is not necessary to decide. It should be avoided upon another trial.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

Appellant asserts that judgment should be rendered in its favor, instead of remanding the cause for a new trial. This, upon substantially the following proposition:

■ The verdict was for it on all of appellees' grounds of recovery except the failure to have a flagman at the crossing; and since an essential element of that ground was not submitted and not requested by appellees, the verdict would not support a judgment for appellees, and therefore the trial court should have rendered judgment for appellant, upon its motion for judgment.

Appellant propounds the following inquiry in this regard:

"Suppose the Trial Judge in this cause and upon the verdict of the jury as actually received, had rendered a judgment for the defendant below, and suppose the plaintiff below had excepted to the rendition of that judgment and this case were before this court with a judgment in favor of the defendant with the plaintiff appealing therefrom, what action would this court take on that appeal?"

Our answer to this inquiry is that the judgment would be reversed.

We recognize, as pointed out in the motion, that there are cases holding that a special issue verdict which omits some essential element of a ground of recovery, submitted and found upon in other respects, will not support a judgment upon that ground, although no objection was made below to the omission. This was conceded in our original opinion. This holding, however, is in direct conflict with other decisions, which were uniform in this regard up to a few years ago.

The theory upon which a ground of recovery is submitted is that the findings of the jury thereon will form the basis, and the only basis, of a judgment by the court *upon that particular ground.* Therefore, any omitted element must be presumed as found in support of the other findings upon that ground. It is as though the court had directed a verdict upon the omitted issue in favor of the affirmative of the ground to which it appertains. Otherwise, why

submit any issues upon such ground at all? Such issues would be purely academic and supererogatory, if, after the jury's findings thereon, the trial judge would be at liberty to find the omitted element in favor of the otherwise losing party. As pointed out in our original opinion, such holding would destroy the 1897 amendment to the special verdict statutes.

We recognize the importance of terminating litigation, an outstanding objective of the 1897 amendment. But this objective is not paramount over all others, and must give way when the latter become more important. A fair and impartial trial is a prime objective; as is also the right of a trial by jury upon the facts. The decision in Ormsby v. Ratcliffe was essential to preserve these rights to the losing party in the trial court. The holding that an omitted element in a ground of recovery, otherwise submitted, must be presumed in support of the submitted issues upon said ground is essential to preserve the rights of the winning party below.

The right of review itself conduces to a prolongation of litigation; and to that extent defeats the objective of a speedy termination of litigation. It is regarded, however, as essential to the ends of justice, a higher and more important objective than speed alone in terminating litigation. A proper balance between expedition, on the one hand, and preserving the substantial rights of the litigants, on the other, is the paramount goal toward which judicial administration should ever strive, however short it may fall in attaining it.

Expense of further trial to the litigant not at fault is one of the unrecompensable damages or inconveniences incident to litigation in this state at this time. Taxable costs of errors committed in the trial must necessarily fall upon the litigants. In so far as the costs of appeal are concerned, they fall upon the one in whose favor the error was committed (the prevailing party below or losing party on appeal). This is true although the appellee may have done everything in his power to prevent the error in the trial court. For example, both parties request submission of a certain element in a ground of recovery otherwise submitted. The trial court takes the view that the evidence is conclusive as to such element, and refuses both requests. If such refusal should constitute reversible error, the prevailing party below would be compelled to pay the costs of appeal and the ultimately losing party the additional costs of further trial below. The same rule now exists where the prevailing party below has not requested the submission of the omitted element, and, therefore, in a sense may be said to be at fault and contribute to the error. In such situation appellant urges that the appellee should be penalized, not only by having to pay the costs of appeal, but by being denied any further trial of the case. The manifest injustice of such a holding has already been pointed out. It would make of mere procedure a most perilous expedient, not alone to the average lawyer, but to the most skillful. A more equitable imposition of the burdens of litigation, by imposing the expense of delay and further trial upon the party responsible for it, might be devised. But the mere fact that our present procedure admits in some instances of injustice and inequity in this regard is no warrant for imposing upon the party at fault the forfeiture of all his substantial rights.

We have written thus at length upon this matter, because of the noted conflict in authority; and the fact that the arguments now presented are frequently urged in other cases before this court.

The motion is overruled.

Overruled.