## CAMPBELL LUMBER CO. v. CORTASA et ux.

### No. 8224.

Court of Civil Appeals of Texas. Austin.

May 27, 1936.

Rehearing Denied June 10, 1936.

Walker Saulsbury, of Temple, for appellant.

Byron Skelton and W. A. Shofner, both of Temple, for appellees.

McCLENDON, Chief Justice.

In February, 1928, the lumber company (appellant) agreed to erect for appellee Joe

Cortasa a frame garage and store building, in payment of which Cortasa executed his note in the principal sum of $1,013, payable $25 per month, and bearing 8 per cent. interest per annum. The note was secured by mechanic's and trust deed liens upon the garage and store property, executed by Cortasa and wife. At that time Cortasa owed the lumber company a balance of $253 upon a bill for lumber used in the erection of a dwelling house. Although the lien instruments do not so state, it was conceded that this sum was carried into the note as a part of the principal. It was also conceded that included in the contract (likewise omitted from the instruments) was a graveled driveway leading from the street to the garage. The garage was rented to an oil company at $35 per month, and it was agreed that the lumber company was to collect $25 of this amount and apply it on Cortasa's indebtedness. In the fall of 1928, Maxwell Campbell, vice president of the lumber company, loaned Cortasa $100, taking his unsecured note therefor, bearing 10 per cent. interest per annum. The various rent collections by the lumber company were entered as credits upon the two notes. At some stage in the negotiations it was agreed to substitute a concrete for the graveled driveway. It was the lumber company's theory that this was an extra, which Cortasa agreed to pay the cost of, which it claimed was $250. The suit was for an alleged balance of $744.05, which included the $250 plus some claimed additional extras. It was Cortasa's theory (amply supported by pleading and proof) that the original contract price of the garage, store, and graveled driveway was $600; that before the instruments were executed the change to concrete driveway was made for an agreed sum of $50, which, added to the $253 balance, made the entire indebtedness $903; that Cortasa and wife could not read or write the English language, and the sum of $1,013 was fraudulently written into the note and other instruments. It was sought to have the instruments reformed to show this claimed amount ($903) instead of the inserted amount ($1,013). Cortasa admitted extras to the extent of $6.85. The judgment, which was upon a special issue verdict supporting Cortasa's theory, was in favor of the lumber company for $6.40, which sum was arrived at by deducting 45 cents overpayment on the notes from $6.85 admitted extras. There is no dispute about the credits or the correctness of the amount of the judgment, based upon Cortasa's theory.

The main contention of the lumber company is that (1) the pleadings, (2) the evidence, and (3) the jury findings are insufficient to support the claim of fraud.

We think it unnecessary to set out the pleadings or evidence upon this issue. We have carefully read the pleadings and the entire statement of facts, and find that they fully embody every element essential to establish Cortasa's theory in this regard.

The only issue submitted to the jury upon this theory (answered "Yes") was the following: "Do you find from a preponderance of the evidence that it was agreed between the plaintiff and the defendants, Joe Cortasa and Mary Cortasa, that the filling station described in evidence before you herein, including its concrete driveway, was to be constructed for the sum of $650.00?"

There was no objection to this issue, and no issue requested by either party. It is the lumber company's contention that this issue was only evidentiary, submitted none of the elements of fraud, and therefore furnished no basis for the judgment.

■ It is a general rule that special issues must be construed in the light of the evidence. Speer on Special Issues, p. 267, § 208, and note 12.

■ The sharp conflict in the evidence was upon the terms of the contract. Campbell testified unequivocally that the original contract price of the garage and store was $760, and that the amount stated in the note represented the true agreement of the parties, namely, this $760, plus the old account, $253, or, in all, $1,013; that the change to a concrete driveway was made after the papers were executed under an agreement that Cortasa would pay whatever it cost the lumber company, which was $250. On the other hand, Cortasa testified equally as positively that the contract price was $600, that $50 was added for the concrete driveway before any of the papers were signed, and that the true amount which the note and instruments should have stated was $903. It was not controverted that all of these instruments were prepared by the lumber company's attorney, the acknowledgments taken by its employee, and that neither Cortasa nor his wife could read or write English. If Cortasa was telling the truth regarding the agreement, it is manifest that he signed instruments variant from his agreement—instruments which had been deliberately so prepared by or at the instance of the lumber company. The learned trial judge no doubt took the view that the

whole issue of fraud hinged upon whose story was true regarding the terms of the contract, and into this issue was drawn all essential elements of actionable fraud vel non. Manifestly this was the theory upon which the case was submitted to the jury, and neither side urged any objection to its being so submitted. Certainly the terms of the agreement, and whether they were correctly embodied in the instruments, was the prime basic element of actionable fraud.

Under these circumstances, we think it was incumbent upon the lumber company, if not satisfied with the manner in which the issue was submitted, to seasonably object or request what it regarded as omitted essential elements. The views of this court upon this subject are set forth in the recent case of Panhandle & S. F. Ry. v. Friend (Tex.Civ.App.) 91 S.W.(2d) 922.

This holding renders unimportant the other points urged in the lumber company's brief; and their discussion is therefore pretermitted.

The trial court's judgment is affirmed.

Affirmed.