**Arline S. HEXT, Appellant,**

v.

**Ruth PRICE, Ruth Arlene Walker, Independent Executrix of the Estate of James Oren Price, Deceased, and John D. Fritzlen, Independent Executor of the Estate of May M. Wright, Deceased, Appellees.**

**No. 07–91–0281–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 8, 1993.

Rehearing Overruled March 4, 1993.

Nickum & Naylor, Ronald D. Nickum, Amarillo, for appellant.

Lemon Shearer Ehrlich Phillips & Good, P.C., Booker, Otis C. Shearer and F. Keith Good, Joe E. Starks, Dallas, for appellees.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

REYNOLDS, Chief Justice.

Arline Hext appeals from that portion of the trial court's judgment upholding a life tenant's sale of real property in which she had a remainder interest. Ruth Price; Ruth Arlene Walker, independent executrix of the estate of James Oren Price, deceased; and John Fritzlen, independent executor of the estate of May M. Wright, deceased, collectively referred to herein as the Price Group, appeal from the portion of the judgment awarding Hext attorney's

fees and prejudgment interest at a rate of ten percent on her recovery of oil and gas lease bonuses and royalties. Agreeing that the rate of prejudgment interest should have been calculated at six percent, we will reform the pertinent portion of the judgment and, as reformed, affirm it.

The groundwork for the present controversy was laid by the last will and testament of David C. Wright, who died in 1952. By his will, he left his one-half interest in community real property to his wife, May Wright, as a life estate coupled with a power of sale of all the community property, and a remainder interest to his nieces and nephews, including W.R. Hext, husband of Arline Hext. Specifically, he gave May Wright, as life tenant, "full power of sale to sell my community one-half of said community real estate along with her community one-half of said real estate for any price she may see fit and proper, and for all cash." In the event of the sale, May Wright was "to invest the proceeds from my one-half of said community real estate in United States Government Bonds" and have the interest therefrom, with the bonds to vest in the remaindermen at her death.

Litigation ensued over the construction of David C. Wright's will.[1] The Supreme Court held that the will required May Wright to make an election, *Wright v. Wright*, 154 Tex. 138, 274 S.W.2d 670, 676 (1955), and remanded the cause to the district court to construe the will to conform to its holdings. *Id.* 274 S.W.2d at 678. Upon remand, the district court construed the will as providing, among other things, that May Wright "is given power and authority to make and consummate a bona fide sale, and to convey in fee simple, the entire 100% interest in and to said real estate ... for cash." No appeal was taken

from the trial court's judgment, and May Wright elected to take under the will. *Wright v. Wright*, 318 S.W.2d 788, 790 (Tex.Civ.App.—Amarillo 1958, writ dism'd).

After David Wright's death, W.R. Hext purchased the remainder interest in the surface estates of two of his cousins, Verdi Terrell's for $24 per acre, and Marie Brown's for $28.80 per acre. May Wright and the remaindermen, including W.R. Hext and later Arline Hext, executed oil and gas leases on the property. The leases gave May Wright the right to receive and use the oil and gas lease bonuses and royalties during her life.

In May of 1986, May Wright conveyed the real property impacted by David Wright's will, a total of 4176 acres of ranch land,[2] subject to the reservation of a life estate in one section of land,[3] for a purchase price of $624,000 to James Oren Price, known as Ode.[4] Ode had been an employee and friend of the Wrights for more than 50 years, was a signatory on May Wright's bank accounts, and worked closely with her in conducting her business affairs. Later, in January of 1987, Ode reconveyed to May Wright a life estate in the mineral rights to the property for a stated $10 and other good and valuable consideration.

W.R. Hext died and his wife, Arline Hext, succeeded to his remainder interest through his estate. Although she learned of the sale to Ode within two months of the conveyance, she did not raise an objection to it until after the death of May Wright on 12 April 1987.

Hext approached the executor of May Wright's estate, John Fritzlen, to request her portion of the estate as a remainderman. There is evidence that Fritzlen declined to release her remainder portion be-

---

1. The reported decisions begin with *Wright v. Wright*, 274 S.W.2d 414 (Tex.Civ.App.—Amarillo 1954), *rev'd in part and aff'd in part*, 154 Tex. 138, 274 S.W.2d 670 (1955), continue with *Wright v. Wright*, 304 S.W.2d 951 (Tex.Civ. App.—Amarillo 1957, writ ref'd), and conclude with *Wright v. Wright*, 318 S.W.2d 788 (Tex.Civ. App.—Amarillo 1958, writ dism'd).

2. The land is described as all of Sections 75, 76, 101, 102, 163, 164, and the East one-half of

Section 74, in Block 43, H & TC RR. Co. Survey, Lipscomb County, Texas.

3. The life estate was reserved in Section 102.

4. By his will, David C. Wright also devised to James Oren Price, a ranch employee, a section of the community property land in fee simple. *Wright v. Wright*, 154 Tex. 138, 274 S.W.2d 670, 672 n. 1 (1955).

cause she approached him only a few days after May Wright's death, no inventory or accounting had been done, and he had been notified by the attorney representing the other remaindermen not to make any disbursements until their interests had first been satisfied.

Failing to receive her remainder interest, Hext filed suit against Ode; his wife, Ruth Price; and Fritzlen, both individually and as the executor of May Wright's estate. Subsequent to the original filing, Ode died, and Ruth Arlene Walker was appointed independent executrix of his estate. The action against Fritzlen individually was discontinued, and he remained a party only as the executor of May Wright's estate.

By her live trial pleadings, Hext sought to recover the land and the oil and gas lease bonus and royalty monies attributable to her remainder interest, alleging the conveyance from May Wright to Ode was not a bona fide sale in compliance with David Wright's will because there was no, or grossly inadequate, consideration given for the conveyance. In her petition, she alleged causes of action for declaratory judgment, breach of fiduciary duty by the life tenant, the imposition of a constructive trust on the title to the real property, for an accounting, debt, conversion and waste in connection with the royalties and bonuses, partition, and ratification and adoption of wrongful acts including conversion, misappropriation and failure to account for money, and tortious interference with inheritance rights. She requested recovery of attorneys' fees under sections 37.001 and 38.001 of the Texas Civil Practice and Remedies Code Annotated (Vernon 1986), the Uniform Declaratory Judgments Act.

The Price Group generally denied Hext's allegations, and responded with contentions that W.R. and Arline Hext had waived their rights to an accounting of oil and gas lease bonuses and royalties, and that Hext should be estopped from asserting any right to recovery. Continuing, they contended May Wright had a plenary power of sale, she did not exceed her power in selling the property, Hext had no inheritance rights from May Wright that could have

been interfered with, the conveyance was a bona fide sale for sufficient consideration, and Hext had no standing to complain of the sale. However, they agreed that Hext was entitled to receive her portion of the proceeds of the sale after an appropriate adjustment for ad valorem taxes. Indeed, they tendered the offer prior to, and again during the course of, the trial.

In the order of its "yes" or "no" answers required to the submitted questions material to this appeal, the jury failed to find that Fritzlen, as executor of May Wright's estate, converted any part of the net after-tax money attributable to Hext's remainder interest, or that anyone, living or dead, had intentionally interfered with her inheritance rights. The jury found that neither W.R. nor Arline Hext had waived the right to receive their portion of the oil and gas lease bonuses and royalties upon the death of May Wright. The jury failed to find there was no consideration for the sale of the lands from May Wright to Ode, or the purchase price paid by Ode was grossly inadequate, or the conveyance of the land by May Wright to Ode was not a bona fide sale.

Hext moved for judgment on the jury's answers concerning waiver and for judgment notwithstanding the verdict on the issues regarding consideration and bona fide sale. The motion for judgment n.o.v. was overruled.

Rendering judgment, the trial court awarded Hext $128,630.20 as the agreed amount from oil and gas lease bonuses and royalties after taxes were paid, together with $48,421.01 for prejudgment interest calculated at ten percent simple interest per annum, with post-judgment interest on both sums at the rate of ten percent per annum. Upholding the sale, the court awarded Hext $122,944.64 as her share of the sale proceeds, with six percent per annum prejudgment interest and ten percent per annum post-judgment interest calculated thereon. She was awarded $53,030 for attorneys' fees, representing thirty percent of her recovery of oil and gas lease bonuses, royalties, and prejudgment interest.

In anticipation of appeals, the monies awarded were deposited with the clerk of the trial court pending a final disposition. Without moving for a new trial, Hext first perfected her appeal and then, after their motion for new trial was overruled, the Price Group perfected an appeal.

■ Hext has mounted a seven-point attack against the judgment, presenting with her first three points of error the controlling question whether the trial court erred in upholding the sale and failing to grant her judgment n.o.v. In summary, she submits the evidence is conclusive that (1) there was no consideration for the sale, (2) the price paid for the conveyance was grossly inadequate, and (3) the transaction was not a bona fide sale. Each of the first three points are expanded to add that the jury's answers to the contrary are against the great weight and preponderance of the evidence.[5]

By her fourth, fifth, and sixth points of error, Hext charges the trial court erroneously failed to enter judgment n.o.v. based on the evidence supporting her first three points of error, and failed to award her relief, *i.e.*, her proportionate ownership of the real estate, a partition of it, and resultant proceeds due her, consistent with an invalidation of the sale. By her final point of error, she contends the trial court erred in failing to disburse to her the funds held by the clerk.

The Price Group pursued their appeal to complain that the trial court erred in awarding Hext prejudgment interest at ten percent on after-tax proceeds of oil and gas lease bonuses and royalties, and in permitting recovery of attorneys' fees under the Uniform Declaratory Judgments Act. Since Hext filed her appeal first, we will consider it the original appeal and discuss the issues presented seriatim.

The validity of Hext's first three points of error depends on whether the evidence, upon which the jury based its "no" answers, conclusively established that there was no consideration for the sale of the lands, the price Ode paid was grossly inadequate, and the conveyance from May Wright to Ode was not a bona fide sale. To prevail under her live trial pleadings, Hext assumed the burden to prove those facts.

By answering "no" to the submitted questions, the jury did not find there was consideration for the sale, or the price paid was adequate, or the conveyance was a bona fide sale; instead, the "no" answers signify that Hext failed to persuade the jury that she discharged her burden to prove the facts by a preponderance of the evidence. *C. & R. Transport, Inc. v. Campbell,* 406 S.W.2d 191, 194 (Tex.1966). Although the jury's failure to find a fact vital to Hext's recovery need not be supported by affirmative evidence, *Traylor v. Goulding,* 497 S.W.2d 944, 945 (Tex.1973), if there is evidence which supports the jury's answers, then our review of the evidence need go no further. Absent supporting evidence, the entire record must be examined to ascertain whether the facts are conclusively established. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690–91 (Tex.1989).

In submitting the evidence is conclusive that there was no consideration for the sale, the purchase price was grossly inadequate, and the transaction was not a bona fide sale, Hext argues the evidence proves no consideration was involved in the transaction, the sale was not supported by adequate consideration, and the transaction was a gift structured to look like a sale, it was not made in good faith, and the sale did not comply with the provisions of David C. Wright's will. Summarized, the body of evidence she emphasizes reveals that pursuant to their executed contract, Ode issued a check on his checking account for $624,000 payable to May Wright as the purchase price of the lands. Prior to the execution of the contract of sale, Ode's bank account did not contain $624,000, and

5. We may not entertain Hext's factually insufficient complaints, because she did not file a motion for new trial, in which a factually insufficient point is a prerequisite to complain on appeal that a jury's answer is against the great weight and preponderance of the evidence. Tex.R.Civ.P. 324(b)(3); Tex.R.App.P. 52(d); *Cecil v. Smith,* 804 S.W.2d 509, 510 (Tex.1991).

he could have secured a Federal Land Bank loan, but did not do so. After the execution of the contract and before the issuance of the check, $653,651.42 was transferred to Ode and Ruth Price's bank account from various Oklahoma bank or savings and loan accounts belonging solely to May Wright. There was testimony that the mineral estate had a value of $933,338, and the surface estate had a value of $125 per acre, or $522,000 for the 4176 acres. Although May Wright's power of sale was to convey a fee simple title to 100% of the land, in making the conveyance she reserved a life estate in one section of the land.

From this evidence, Hext argues the purchase price money was the seller's money and could not constitute consideration for the sale, the sale of the land having a total value of $1,455,338 for $624,000 shows grossly inadequate consideration, and there was no bona fide exercise of May Wright's power of sale granted by David C. Wright's will. However, there was other evidence for the jury's consideration.

Before the money transfers, May Wright possessed more than $1.5 million in money-type assets, less than half of which was subject to the remaindermen's claims. A witness, qualified as a legal expert, testified that the law presumes that May Wright, in expending the commingled funds, expended her own money first. *See, e.g., Batmanis v. Batmanis,* 600 S.W.2d 887, 890 (Tex.Civ.App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). Although it was not documented whether monies transferred from May Wright's accounts to the Prices' bank account were a loan or a gift, the witness concluded that it was irrelevant, for once the funds were deposited in the Prices' bank account, they owned the money, and its expenditure to purchase the land constituted consideration.

■ However, if it be considered that the transferred monies were a part of the remaindermen's claims, we disagree with the testimony presented, and the parties' concession, that it matters not whether the transaction was a gift or loan. Where, as here, a life tenant is granted a power of sale, such power is more restricted than a general power of disposition, and does not include the right to make a gift. *Commercial Bank, Uninc., of Mason v. Satterwhite,* 413 S.W.2d 905, 909 (Tex.1967).

■ Nevertheless, there is evidence from which the jury could believe that May Wright acknowledged and approved of the transfer of funds, albeit Fritzlen was not certain of the character of the transfer and failed to include it in any fashion on tax returns for 1986. After May Wright's death, Fritzlen treated the transaction as a loan for estate tax purposes. This treatment was consistent with his treatment of previous monies conveyed to Ode from May Wright's accounts, even though no notes were prepared for any of the "loan" transactions.

Moreover, May Wright's actions were consistent with a belief she had sold the property in accordance with David Wright's will, which, the evidence showed, was the guidepost for structuring the sale. She endorsed and deposited the check from Ode and placed in excess of $312,000 in United States Government Bonds.

Given the state of the evidence, the jury could believe the transferred monies either were a gift of May Wright's own funds or were a loan to Ode, the expenditure of which by him was consideration for the purchase of the land. Thus, there is evidence to support the jury's failure to find that there was no consideration for the sale.

Despite Hext's contention that the uncontroverted evidence shows grossly inadequate consideration for the sale of a ranch having a total value of $1,455,338 for $624,000, there also was evidence in support of the jury's failure to find that the purchase price was grossly inadequate. The property was sold to Ode for in excess of $149 per acre, and he reconveyed a life estate in the mineral estate to May Wright, whose receipt of royalty payments remained uninterrupted. Appraisal testimony placed the value of the surface of the land at between $125 to $130 per acre, and similar land in the area was sold from $93 to $110 per acre. The $4 per acre rental value found by the jury computed to a 3.2% gross annu-

al return on the price paid for the land before deductions for maintenance, a return typical of ranches.

The $933,338 valuation placed on the mineral estate was based on the existing production from four wells, with 90% of the value attributed to the Bussard–Cameron well, which was not situated on the conveyed land. May Wright's annual royalty income had decreased 68% in the two years prior to the sale. The attorney who processed the transaction, with experience in like transactions and in oil and gas production, expressed the opinion that under the circumstances, $624,000 was a reasonable consideration.

From this evidence, the jury could believe that in view of the circumstances surrounding the transaction, any inadequacy of consideration, if any there was, was not extreme, as it must be for Hext to nullify the sale. *Commercial Bank, Uninc., of Mason v. Satterwhite*, 413 S.W.2d at 909. Indeed, the jury, considering the explained predicates for the valuations Hext deems uncontroverted, was not required to give full credit to the valuations and could believe the testimony that under the circumstances, $624,000 was a reasonable consideration for the sale of the land. Such a belief would honor the "full power of sale" given May Wright by the will of David C. Wright to sell the land "for any price she may see fit and proper, and for all cash." Therefore, the jury's failure to find the consideration was grossly inadequate may not be disturbed.

In submitting Hext's issue inquiring whether the conveyance was not a bona fide sale, the court instructed the jury that

under the terms of the Will of David C. Wright, May Wright is given power and authority to make and consummate a bona fide sale, and to convey in fee simple, the entire 100% interest in and to said real estate. You are instructed that the term "bona fide" means in or with good faith; honestly, openly, and sincerely; without deceit or fraud.

By its "no" answer, the jury failed to find the conveyance was not a bona fide sale.

The evidence that there was no bona fide sale is conclusive, Hext submits, for three reasons: The transaction was not a sale, but was a gift structured to appear as a sale; the transaction was not made in good faith; and the sale was not in compliance with David C. Wright's will since May Wright reserved a life estate in one section of the land.

Hext's reasoning that the transaction was a gift, not a sale, centers around her first two contentions of no and grossly inadequate consideration. These contentions were rejected by the jury, whose answers were not disturbed in our consideration of the contentions.

Her belief that the sale was not made in good faith is premised primarily on Ode's purchase of the land by use of commingled money comprised in part of the corpus of the remainder estate, which caused a significant decrease in the remainder estate. However, the commingling question was presented to the jury and decided adversely to Hext's contention by the jury's failure to find there was no consideration for the sale. And, of course, when the life tenant exercises a power of sale, the remainder estate is decreased, for the sale defeats the remainder in the property sold. *Edds v. Mitchell*, 143 Tex. 307, 184 S.W.2d 823, 825 (1945).

Hext's final reason why the transaction was not a bona fide sale is focused on May Wright's reservation of a life estate in one section of land as not being a good faith compliance with David C. Wright's will. The evidence reveals that the deed of conveyance was prepared to convey 100% of the land, but the reservation was added when May Wright expressed the desire to retain her homestead. Nevertheless, Hext neither pleaded nor inquired of the jury whether the sale should be set aside because of the reservation alone; instead, she relied, without objection, upon the question of a bona fide sale coupled with the court's instruction. She, therefore, was "put upon notice that the jury's answer[ ] ... will form the basis of the court's judgment thereafter to be rendered thereon." *Allen v. American National Insurance Compa-*

*ny,* 380 S.W.2d 604, 609 (Tex.1964) (quoting *Panhandle & S.F. Ry. Co. v. Friend,* 91 S.W.2d 922, 930 (Tex.Civ.App.—Austin 1936, no writ)).

Although the court instructed the jury that May Wright was empowered to make a bona fide sale of the 100% interest in the real estate, the jury was instructed to test the bona fides of the sale by whether it was made "in or with good faith; honestly, openly, and sincerely; without deceit or fraud." In addition to the other evidence, the jury had heard Hext's testimony that she learned of the sale within at least two months after the transaction, and that May Wright gave her and her son $10,000 each in July of 1986. Hext thought the gift was because "Aunt May just kind of like (sic) me." She agreed that the gift was inconsistent with an assertion or opinion that May Wright was engaged in a conspiracy against her in the handling of the estate properties, and she felt it was true that May Wright was not trying to cheat her.

In considering whether the conveyance was not a bona fide sale under the court's instruction and the evidence, the jury was entitled to believe that May Wright acted in good faith, which means that she in fact acted honestly in her conduct of the transaction, *Riley v. First State Bank, Spearman,* 469 S.W.2d 812, 816 (Tex.Civ.App.—Amarillo 1971, writ ref'd n.r.e.), especially since Hext does not contend that May Wright was dishonest. The evidence indicates the transaction was open and above board and was in accordance with May Wright's wishes, there being no evidence of covert actions.

■ As to deceit and fraud, used in the instructional sense of whether the conveyance was an artifice to deceive or defraud the remaindermen, *Garcia v. Rutledge,* 649 S.W.2d 307, 312 (Tex.App.—Amarillo 1982, no writ), the jury could accept Hext's testimony in the light of the other evidence to determine that neither was involved in the transaction. The belief is understandable, because the fact that the conveyance had the effect of reducing the estate which would otherwise go to the remaindermen is not, by itself, sufficient to show a fraudu-

lent conveyance. *Harrell v. Hickman,* 147 Tex. 396, 215 S.W.2d 876, 879 (1949). Then, there is some evidence to support the jury's failure to find the conveyance was not a bona fide sale.

It follows that the evidence did not conclusively establish there was no consideration for the sale of the lands, or that the purchase price was grossly inadequate, or that the conveyance was not a bona fide sale. As a result, Hext's first three points of error must be, and they are, overruled. Our overruling of these points pretermits the need to discuss Hext's remaining points of error, which are dependent upon the sustainment of one of the first three points; therefore, the remaining points are overruled without discussion. Tex.R.App.P. 90(a).

■ By their appeal, the Price Group contends first that the trial court erred in awarding Hext ten percent instead of six percent as the rate of prejudgment annual interest on her award of $128,630.20 for after-tax oil and gas lease bonuses and royalties. We agree that current law applicable to the facts prescribes the annual interest rate at six percent rather than the ten percent awarded.

In the beginning, Hext disputed that the amount in controversy was readily ascertainable, and asserts the court's award of ten percent prejudgment interest was correct on the authority of *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 554 (Tex.1985) (prejudgment interest on unliquidated personal-injury damages is to accrue at the prevailing rate that exists on the date judgment is rendered), and *Perry Roofing Co. v. Olcott,* 744 S.W.2d 929, 930 (Tex.1988) (prejudgment interest of ten percent is proper when the amount of damages is not ascertainable from the fact of the contract). Nevertheless, when it became clear that the amounts of the bonus and royalty payments held by the estate were ascertainable from, and were mathematically calculated by the accountant from vouchers provided by oil and gas companies pursuant to, the agreements made with the companies by the parties, Hext accepted the amounts as correct.

Thus, the agreements provided the means for ascertaining the amounts of the bonus and royalty payments. *Phillips Petroleum Co. v. Stahl Petroleum Co.*, 569 S.W.2d 480, 483–84 (Tex.1978). In this state of the record, the controlling authority provides that

> interest at the rate of six percent per annum shall be allowed on all ... contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

Tex.Rev.Civ.Stat.Ann., art. 5069–1.03 (Vernon 1987). The Price Group's first point of error is sustained, which requires that the judgment be reformed to provide for the correct rate and amount of prejudgment interest and the total amount to which the post-judgment interest rate applies.

■ The parties stipulated that attorney's fees could be decided by the court without the intervention of the jury, but they reserved their claims that the opposing party was not as a matter of law entitled to any fees. The court, making requested findings of fact and conclusions of law, recited that Hext sought in part a declaratory judgment on her share of accumulated bonus and royalty payments and whether her husband had waived his right to them as claimed by the Price Group. The court then concluded that in the exercise of its discretion, it was just to award Hext $53,030 as reasonable attorney's fees, which comported with the 30% contingency contract she had executed, for representation in her declaratory judgment action.

With their second point, the Price Group faults the court for the award of attorney's fees under the Declaratory Judgments Act. Asserting that Hext's entitlement to her share of the bonus and royalty payments depended on the fact issues of waiver, the *Price Group cites Emmco Insurance Company v. Burrows*, 419 S.W.2d 665, 671 (Tex.Civ.App.—Tyler 1967, no writ), for the statement that Texas case law clearly holds that a declaratory judgment is not the proper remedy if the only thing to be resolved is a factual dispute. Consequently, it is their conclusion that since declaratory

relief was not proper, the attorney's fee recovery cannot be based on the Act. We are not disposed to that view.

With respect to the Price Group's stated position, it has been pointed out that the subject presented in *Emmco* was plaintiff's attempt to avoid a contract, not introduced into evidence, which was an improper subject for declaratory relief, and that the dictum in the opinion relating to a narrow interpretation of the Declaratory Judgments Act is contrary to the clear provisions of the Act itself and the weight of authority. *Anderson v. McRae*, 495 S.W.2d 351, 357 (Tex.Civ.App.—Texarkana 1973, no writ). The Act is remedial, being purposely designed to be liberally construed and administered for the declaration and settlement of rights, status and legal relations of persons interested, as material here, under a deed, will, and written contracts, or in the administration of the estate of a decedent, even though further relief is or could be claimed. Tex.Civ.Prac. & Rem.Code Ann. §§ 37.002–37.004 (Vernon 1986), § 37.005 (Vernon Supp.1993). These principles were early affirmed, *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d 709, 713–15 (1945), with the admonition that the action for declaratory judgment "should not be hedged about by technicalities." *Id.* 190 S.W.2d at 713.

Hext alleged that her action was brought pursuant to the Declaratory Judgments Act and, in reality, the controversy concerned her rights under the instruments underlying the litigation. Although factual issues were determined, the court's judgment was declaratory of the whole controversy. *Cobb v. Harrington*, 144 Tex. 360, 190 S.W.2d at 715. The Act authorizes the discretionary award of reasonable and necessary attorney's fees as are equitable and just. Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (Vernon 1986). We are not authorized to set aside the court's award of attorney's fees absent a clear showing that it abused its discretion, *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985), and the Price Group does not contend for an abuse of discretion. Therefore, the Price Group's second point of error is overruled.

Accordingly, the paragraph (1) portion of the judgment allowing prejudgment interest of $48,421.02, calculated at a rate of ten percent per annum, on the $128,630.20 awarded Hext for after-tax oil and gas lease bonuses and royalties, and the total amount of $177,051.22 to which the post-judgment interest rate of ten percent per annum applies, is reformed to provide for, respectively, prejudgment interest of $32,724.72, calculated at a rate of six percent per annum, on the $128,630.20 award,[6] with the total amount being $161,354.92 to which the post-judgment interest rate of ten percent per annum applies. As reformed, the judgment is affirmed.

---

6. Interest at the rate of six percent per annum on $128,630.20 equals $21.14 per day which, multiplied by the 1,548 days elapsing between thirty days after May Wright's death on 12 April 1987 and the signing of the judgment on 18 July 1991, totals $32,724.72. *See* Tex.Rev.Civ.Stat. Ann. art. 5069–1.03 (Vernon 1987).